**Gerald E. BOURGET and Security Insurance Company of Hartford, Plaintiffs,**

**v.**

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant.**

**Civ. No. 12532.**

United States District Court,
D. Connecticut.

May 4, 1970.

See also, 287 F.Supp. 108; 48 F.R.D. 29.

Stephen I. Traub, of Lynch & Traub, New Haven, Conn., for plaintiff Gerald E. Bourget.

Peter C. Dorsey, of Flanagan, Dorsey & Flanagan, New Haven, Conn., for plaintiff Security Ins. Co. of Hartford.

Curtiss K. Thompson, of Thompson, Weir & Barclay, New Haven, Conn., for defendant.

TIMBERS, Chief Judge.

In this diversity action, Gerald E. Bourget ("Bourget"), the judgment creditor of defendant's insured ("Thompson"), and Security Insurance Company of Hartford ("Security"), the compensation carrier of Bourget's employer, seek to recover against Government Employees Insurance Company ("GEICO") for its alleged bad faith failure to settle Bourget's claim against Thompson. Plaintiffs assert their rights under Conn. Gen.Stat. § 38–175. In a previous opinion, this Court held that such claim may be maintained.[1] For the reasons stated

---

1. Gerald E. Bourget v. Government Employees Insurance Company and Patricia Thompson, 287 F.Supp. 108 (D.Conn. 1968). See also Gerald E. Bourget v. Government Employees Insurance Company, 48 F.R.D. 29 (D.Conn.1969) (applicability of attorney-client privilege to plaintiff's production motion and inter-

below, the Court grants the instant motions of plaintiffs, Rule 12(f), Fed.R. Civ.P., to strike the special defenses asserted against them; and denies defendant's motions for production and a protective order, Rules 34 and 30(b), Fed.R. Civ.P.

## I.

As to both plaintiffs, defendant contends that the lack of assets in the Thompson estate [2] at the time of Bourget's action against it resulted in the absence of any basis for damage to Thompson; consequently defendant argues that Thompson had no claim against it to which plaintiffs could be subrogated under Conn.Gen.Stat. § 38–175.

Defendant asserts the insolvency of Thompson by reference to an affidavit of defendant's former counsel wherein he states that he was informed by Bourget's counsel that the latter's investigation had disclosed that Thompson had no assets. The Court assumes, for purposes of this motion, that Thompson at all relevant periods did not have sufficient assets to satisfy the excess judgment rendered against him.

■ Conn.Gen.Stat. § 38–175 provides, in pertinent part, as follows:

"[An] insurance company . . . shall, whenever a loss occurs under [its] policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him. . . . Upon the recovery of a final judgment . . . if the defendant in such action was insured . . . such judgment creditor shall

be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

In other words, plaintiffs' rights as judgment creditors of Thompson are those which Thompson would have had if he personally had paid the excess judgment. That he was insolvent and thus unable to pay the excess judgment is wholly irrelevant so far as plaintiffs' rights of subrogation are concerned.

■ Defendant's reliance upon Harris v. Standard Accident & Ins. Co., 297 F.2d 627 (2 Cir. 1961), cert. denied, 369 U.S. 843 (1962), is misplaced. *Harris* held that "where the insured was insolvent before the rendition of the excess judgment, had not paid any part of it, and subsequently had been discharged from any future obligation to pay it, he was not actually harmed by the bad faith refusal of his insurer to settle." See Young v. American Casualty Co., 416 F.2d 906, 911 (2 Cir. 1969), petition for cert. dismissed pursuant to Rule 60, 396 U.S. 997 (1970). See also Brockstein v. Nationwide Mutual Ins. Co., 417 F.2d 703 (2d Cir. 1969). *Young* held, as *Harris* had recognized, that where the insured was not insolvent, his bankruptcy trustee was entitled to the full amount of the excess judgment. But both *Harris* and *Young* involved a construction of uncodified New York law which is less liberal than the statutory law of Connecticut in requiring "proof of actual loss to support recovery by the insured or his estate for the in-

rogatories); Gerald E. Bourget and Security Insurance Company of Hartford v. Government Employees Insurance Company, Civil Action No. 12,532, D.Conn., November 20, 1969 (unreported) (defendant GEICO's motion for rehearing denied with respect to orders of District Court entered July 19, 1968 and July 11, 1969, as reported at 287 F.Supp. 108 and 48 F.R.D. 29, *supra*, respectively); Government Employees Insurance Company v.

Timbers, No. 34,307, 2 Cir., December 15, 1969 (unreported) (defendant GEICO's petition for writ of mandamus or prohibition to review orders of District Court entered July 19, 1968, July 11, 1969 and November 20, 1969, *supra*, denied).

2. The tortfeasor Thompson was deceased at all relevant periods during this litigation. For convenience, he, his estate, and his administratrix all will be referred to as "Thompson".

surer's bad faith in failure to settle." *Young, supra,* 416 F.2d at 911. To dispose of the instant motion, the Court need not decide, therefore, whether Thompson was insolvent, as in *Harris,* or had some small assets, as in *Young;* nor is it necessary to decide whether the other prerequisites for recovery under New York law have been met. Connecticut law, which is controlling here, requires in this judgment creditor's action that we assume payment by the insured of the excess judgment. While this results in the judgment creditor having greater rights than the insured would have had, the legislature has chosen to confer such rights. Surely the injured party may be placed in a more favorable position than the insured tortfeasor. While the insolvency of the insured may be a relevant consideration on the issue of defendant's alleged bad faith in failing to settle Bourget's claim, its existence, as a matter of law, does not provide a defense to plaintiffs' claims in the instant action.

## II.

Defendant asserts that this action must be dismissed because of the absence of requisite diversity between it and Security. Defendant, a District of Columbia corporation, claims that it must be deemed to have the Connecticut citizenship of Thompson under the provisions of 28 U.S.C. § 1332(c).[3] Since Security is a Connecticut corporation, complete diversity is alleged to be absent.

The purpose of § 1332(c) is made manifest in its legislative history.[4] It was intended to eliminate from federal diversity jurisdiction actions brought pursuant to the Louisiana and Wisconsin direct action statutes. Under such statutes an injured resident of the same state as the tortfeasor could sue the latter's foreign insurer directly without joining the tortfeasor, thereby obtaining access to a federal forum based on diversity which would not exist had the tortfeasor been sued. Section 1332 (c) removed the federal diversity jurisdiction basis for such "direct actions" by deeming the insurer to have the citizenship of the non-party insured. But, as the legislative history and subsequent cases make clear, § 1332(c) applies only to these limited "direct actions" and not to "all actions" brought against an insurer in which its insured is not joined as a defendant.

Thus, this provision has been held inapplicable in diversity actions to determine the liability of insurers.[5] It likewise has been held inapplicable in diversity actions by the insured (a) for a declaration of the validity of his policy[6]; (b) for the benefit of his judgment creditors[7]; and (c) against his own carrier under an uninsured motorist pro-

---

3. 28 U.S.C. § 1332(c) provides, in pertinent part, as follows:

   "[I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business."

   Defendant's motion of August 21, 1969 to join Security as a plaintiff in the instant action alleged that "The joinder of Security Insurance Company of Hartford as a plaintiff in this action is needed for a just adjudication of this action and will not deprive the Court of jurisdiction of the subject matter of this action. . . ." The Court granted this motion on September 29, 1969, absent objection by plaintiff and with the consent of Security. In fairness, defendant's counsel was not aware of § 1332(c) when he filed defendant's motion to join Security as a plaintiff.

4. See 1964 U.S. Code Cong. & Adm.News 2778–85.

5. Henderson v. Selective Ins. Co., 369 F. 2d 143 (6 Cir. 1966); Walker v. Fireman's Fund Ins. Co., 260 F.Supp. 95 (D.Mont.1966).

6. White v. United States Fidelity & Guaranty Co., 356 F.2d 746 (1 Cir. 1966).

7. Carvin v. Standard Accident Ins. Co., 253 F.Supp. 232 (E.D.Tenn.1966).

vision.[8] Finally, in an action somewhat similar to the instant one, where plaintiff first successfully sued the tortfeasor, and then instituted a subsequent action against the tortfeasor's insurer, § 1332(c) was held inapplicable.[9]

In all of these cases, the respective courts stressed the limited Congressional purpose behind the statute as made manifest by the use of the phrase "direct action" and not "any action" in the statute itself. As noted in *Walker, supra* note 5, at 96:

"Congress evidently intended the word 'direct' to limit the word 'action'. There would be therefore some classes of actions involving insurance companies in which the company would not be deemed to be a citizen of the state of the insured for diversity purposes. The court concludes that unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, that the action is not a direct action. Here [plaintiff] seeks to impose duties upon [the insurer] because of a contractual liability assumed by it. This liability could not be asserted against [the tortfeasor] and hence the action is not a 'direct action.' "

To the same effect is *Carvin, supra* note 7, at 234:

"It is quite clear . . . that it was intended by the Congress that this amendment apply to a limited class of actions, that is, those in which an injured party is permitted to sue, directly and without joinder of the tortfeasor, the tortfeasor's liability insurer without first obtaining a judgment against the tortfeasor himself. This Court must hold that Congress has effectuated this intent by the use of the words 'any *direct action* . . .' Had the legislative intent been of broader scope, it would have been sufficient to say '*any action* . . .', and such language would have encompassed the present action. The word 'direct' must not be judicially stricken from the statute, but rather must be attributed a reasonable meaning in the light of the expressed intention of Congress."

Since an action under Conn. Gen. Stat. § 38–175 is in no way analogous to a direct action such as that to which § 1332 (c) applies,[10] GEICO is not clothed with the citizenship of Thompson, this action should not be dismissed for lack of diversity jurisdiction, and defendant's special defenses asserting such propositions must be stricken.

### III.

Defendant seeks to preclude recovery by plaintiffs for their failure jointly to prosecute the initial action against Thompson, and for their alleged attempt to avoid the joinder of Security as a party herein. This asserted preclusion rests on an alleged agreement between Bourget and Security to have Bourget prosecute the action in his own name so as not to destroy diversity.[11] Since, as the Court has held in Part II above, the joinder of Security in the instant action did not destroy diversity, the defense here under consideration will be viewed as directed to the prior action against Thompson. In that action, defendant's former counsel represented Thompson; and defendant, in light of the scope of its insurance coverage, was the real party defendant. There has been no claim that the existence of Security as a potential plaintiff in the prior action could not have been ascertained by defendant. Defendant might then have moved for its joinder; having gambled for a favorable verdict and lost, it now

---

8. Inman v. MFA Mutual Ins. Co., 264 F. Supp. 727 (E.D.Ark.1967).

9. Cunningham v. State Farm Mutual Automobile Ins. Co., 297 F.Supp. 1138 (E.D. Tenn.1969).

10. For such an action see, e. g., Newsom v. Zurich Ins. Co., 397 F.2d 280 (5 Cir. 1968).

11. As noted above, both Security and Thompson are citizens of Connecticut.

seeks to attack collaterally Bourget's conduct in that prior action and to preclude any recovery herein. This the Court will not permit. It is highly speculative that a motion to join Security as a plaintiff in the prior action would have been granted.[12] However, even assuming such joinder would have been ordered had an appropriate motion been made, the Court in its discretion declines to permit defendant in the instant action to impose any sanction on plaintiffs based upon such a technical claim. As is discussed in more detail below, Bourget was authorized under the laws of Massachusetts to sue in his own name for the joint benefit of himself and Security.

### IV.

◼ Defendant next contends that Bourget cannot recover for any amount to which Security is subrogated by virtue of its compensation payments to Bourget. This defense ignores the provisions of Chapter 152, Section 15, of the Statutes of the Commonwealth of Massachusetts, which grant the injured party the option either to obtain compensation or to proceed against the tortfeasor, but not both *unless* the facts bring the case within the following provision of the statute:

> "If compensation be paid under this chapter, . . . and if, in any case where the employee has claimed or received compensation within six months of the injury, the insurer does not proceed to enforce such liability within a period of nine months after said injury, the employee may so proceed. . . . [T]he sum recovered shall be for the benefit of the insurer unless such sum is greater than that paid by it to the employee."

Security chose not to prosecute its claim against Thompson; thus Bourget had the right to do so, and did. As discussed in Part III, above, defendant no longer may complain of that choice. By virtue of the statute cited above, and

absent defendant's motion joining Security as a party, Bourget could have prosecuted the instant action in his own name, for the right both of Security and of himself.

◼ Finally, defendant attacks the intervening complaint of Security for its failure to state a claim for relief against defendant. Security was joined as plaintiff by motion of defendant. In its one page intervening complaint, Security alleges (1) its status as the compensation carrier of Bourget's employer; (2) that the injuries to Bourget occurred during the course of his employment; and (3) that under the provisions of the [Massachusetts] Workmen's Compensation Act it has paid and become obligated to pay money to Bourget. It demands apportionment of any judgment recovered in this action so that Security will be reimbursed.

Technically speaking, defendant is correct in asserting Security's failure to state a claim against it, since Security has sought only to protect its interest in Bourget's recovery; but this technical omission can be cured by Security's incorporating in its complaint the allegations already set forth in Bourget's complaint. Since such allegations already are implicit therein, no prejudice to defendant will result. Leave will be granted to Security to serve and file an amended intervening complaint within 10 days of the date of this decision. Assuming such amendment, Security's motion to strike defendant's defense of failure to state a claim is hereby granted.

### V.

◼ Defendant's motion for production, Rule 34, Fed.R.Civ.P., is based upon plaintiffs' alleged agreement with respect to the prosecution of the Thompson action, and, alternatively, on the applicability of § 1332(c) to the instant action. Since both of these defenses are being ordered stricken, defendant's production

12. See Morelli v. Northwest Engineering Corp., 30 F.R.D. 522 (E.D.Wisc.1962) ; Shumate v. Wehlers, 19 F.R.D. 173 (E.D. Mich.1956).

motion accordingly must be denied. Its motion for a protective order, Rule 30 (b), Fed.R.Civ.P., seeks to stay the deposition of Thompson's former counsel, alleging claims of privilege previously ruled upon adversely to defendant by the Court. Accordingly, this motion likewise is denied.

### VI.

The instant action (Civ. No. 12,532) against GEICO to recover for its alleged bad faith failure to settle Bourget's claim against Thompson was commenced on May 3, 1968—*two years ago.* The prior action (Civ. No. 11,119) in which Bourget recovered a $94,900 judgment resulting from a car-truck collision was commenced on October 1, 1965—*four and one-half years ago.* The accident itself occurred in March 1965—more than *five years ago.*

This Court has now filed four comprehensive opinions in the instant action ruling upon various claims of the parties, including whether the complaint states a claim upon which relief can be granted (opinion of July 19, 1968); the attorney-client privilege (opinion of July 11, 1969); rehearing of said motions (opinion of November 20, 1969); and lack of jurisdiction (instant opinion of May 4, 1970). Defendant has had one trip to the Court of Appeals on its petition for mandamus or prohibition (Court of Appeals order of December 15, 1969). In addition, this Court has ruled upon numerous other motions not the subject of formal opinions.

The time must come when the curtain is drawn down on the preliminary skirmishing in this protracted litigation. So far as this Court is concerned, that time is now.

In the exercise of the Court's discretion and pursuant to what the Court believes to be sound administration of federal justice, this case is assigned for a pre-trial conference, pursuant to Rule 10 of the Local Rules of this Court, on Monday, May 18, 1970, at 2 P.M., at Bridgeport; and the case is peremptorily assigned for trial beginning Tuesday, June 16, 1970, at 10 A.M., at Bridgeport.

### ORDER

ORDERED as follows:

(1) That Bourget's motion to strike defendant's special defenses 1–4 is granted in all respects.

(2) That Security's motion to strike defendant's special defenses 1–5 is granted in all respects, on the condition, as to defenses 1 and 3, that Security serve and file an amended intervening complaint within 10 days from the date of this decision.

(3) That GEICO's motion for production is denied in all respects.

(4) That GEICO's motion for a protective order is denied in all respects.

(5) That this case is assigned for a pre-trial conference on Monday, May 18, 1970, at 2 P.M., at Bridgeport.

(6) That this case is peremptorily assigned for trial beginning Tuesday, June 16, 1970, at 10 A.M., at Bridgeport.[13]

---

13. By subsequent agreement of the parties, the pre-trial conference was held on June 15, 1970 and the trial began August 24, 1970.