Joanne **BECKHAM**, Plaintiff-Appellant,

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a corporation, Defendant-Appellee.**

**No. 81–5169.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1982.

Decided Nov. 3, 1982.

William E. Lloyd, Jr., Mix & Hodges, Redondo Beach, Cal., for plaintiff-appellant.

Henry LaTorraca, Perona & Langer, Long Beach, Cal., for defendant-appellee.

Before POOLE and BOOCHEVER, Circuit Judges, and SOLOMON,* District Judge.

POOLE, Circuit Judge:

Joanne Beckham (Beckham) appeals from the district court's grant of summary judgment in favor of appellee Safeco Insurance Company (Safeco) on her California statuto-ry and common law claims for unfair insurance practices. She also appeals from the district court's denial of her motion to remand the action to state court and her demand for a jury trial. We affirm in part and reverse and remand in part.

FACTS

In January, 1976, Beckham was seriously injured in an automobile accident in Los Angeles, California. Both Beckham and the other driver, Nellie Mankin, were citizens of California. Beckham subsequently sued Mankin in California state court to recover for her personal injuries sustained in the accident. Mankin's defense was first assumed by her primary insurer, American Reserve Insurance Company (American Reserve). When it became apparent that the probable liability of Beckham's claim would exceed the $100,000 limit of her policy with American Reserve, her defense was assumed by Safeco, the excess liability insurer. American Reserve made its $100,000 policy limit available to Safeco, making the total liability coverage for Mankin $1,000,-000.

Prior to trial, Safeco made a settlement offer of $225,000 plus an annuity of $1,000 a month for five years, increasing to $1,250 a month for the next five years and finally to $1,500 a month for the remainder of Beckham's life. Beckham rejected this offer and refused to settle for less than the full policy limit of $1,000,000. Safeco would not settle for this amount, and the case proceeded to trial in August, 1979. A jury returned a verdict for Beckham of $1,500,-000, which Safeco promptly paid.

In December, 1979, Beckham brought the present action in state court, alleging that Safeco had engaged in unfair settlement practices in connection with her suit against Mankin in violation of California Insurance Code § 790.03(h)(2), (3), (5) and (13).[1] She

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Section 790.03 provides in relevant part:
    The following are hereby defined as unfair methods of competition and unfair and de-ceptive acts or practices in the business of insurance.

    \*   \*   \*   \*   \*   \*

    (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

also asserted common law claims for intentional and negligent infliction of emotion distress based on the same conduct underlying her statutory claims.

Safeco removed the action on January 30, 1980, to the United States District Court for the Central District of California on the basis of diversity jurisdiction. No motion to remand the action to state court was made at that time. The court denied Beckham's request for a jury trial as untimely because it was not made within 10 days of Safeco's last responsive pleading, as required by Fed.R.Civ.P. 38(b). The district court then granted Safeco's motion for summary judgment on all of Beckham's claims. After entry of summary judgment, Beckham moved to remand the action to state court on the ground that there was no diversity of citizenship between the parties. The court denied this motion. Beckham filed a timely notice of appeal, and we note jurisdiction under 28 U.S.C. § 1291.

DISCUSSION

Beckham argues on appeal that the district court lacked subject matter jurisdiction over her action, that the court erred in granting summary judgment, and that the court abused its discretion in denying her request for a jury trial. We affirm the district court in all respects except as to the grant of summary judgment on Beckham's claim under § 790.03(h)(5).

A. *Diversity Jurisdiction*

■ Safeco is incorporated and has its principal place of business in the state of Washington, and thus is deemed a citizen of that state for purposes of determining diversity. *See* 28 U.S.C. § 1332(c). Since Beckham is a citizen of California, diversity jurisdiction is established. Beckham contends, however, that her suit against Safeco is a "direct action" within the meaning of § 1332(c) to which Mankin, Safeco's insured, has not been joined as a defendant. Since Safeco must therefore be considered a citizen of California, the state of which Mankin is a citizen, diversity is lacking. We disagree.

Section 1332(c) provides in pertinent part that

> in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen . . . .

This portion of § 1332(c) was enacted in 1964 specifically to eliminate from diversity jurisdiction tort claims in which both the injured party and the tortfeasor are local residents, but which, under state "direct action" statutes, are brought against the tortfeasor's foreign insurance carrier without joining the tortfeasor as a defendant. *Velez v. Crown Life Insurance Co.*, 599 F.2d 471, 473 (1st Cir. 1979); *Hernandez v. Travelers Insurance Co.*, 489 F.2d 721, 723 (5th Cir. 1974); *White v. United States Fidelity and Guaranty Co.*, 356 F.2d 746, 747 (1st Cir. 1966). Courts have uniformly defined the term "direct action" as used in this section as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

\* \* \* \* \* \*

(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

\* \* \* \* \* \*

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

None of these subsections specifically indicates whether the duties created are owed to third-party claimants such as Beckham as well as to insureds. The California Supreme Court has held that the duty created by subsection (h)(5) does run to third-party claimants. *See Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979). The California courts have yet to interpret subsections (h)(2), (h)(3) and (h)(13).

bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him. *See Velez v. Crown Life, supra,* 599 F.2d at 473; *Hernandez v. Travelers Insurance, supra,* 489 F.2d at 724; *Irvin v. Allstate Insurance Co.,* 436 F.Supp. 575, 576 (W.D.Okl.1977); *Bourget v. Government Employees Insurance Co.,* 313 F.Supp. 367, 371 (D.Conn.1970); *Walker v. Firemans Fund Insurance Co.,* 260 F.Supp. 95, 96 (D.Mont.1966). Thus, "unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action." *Walker v. Firemans Fund, supra,* 260 F.Supp. at 96.

The present suit is clearly not a direct action since Beckham is not seeking to impose liability on Safeco for the negligence of Safeco's insured, Mankin. Rather, she is seeking to impose liability on Safeco for its own tortious conduct, i.e., Safeco's bad faith refusal to settle her claim against Mankin. Such liability could not be imposed against Mankin, nor could Mankin even be joined as a defendant in this suit. *See Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 891–92, 153 Cal.Rptr. 842, 849–50, 592 P.2d 329 (1979). The district court thus did not err in concluding that diversity jurisdiction existed in this case.

B. *Summary Judgment*

■ Summary judgment may be granted only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Clipper Exxpress v. Rocky Mountain Motor Tariff,* 674 F.2d 1252, 1261 (9th Cir. 1982); *United States v. First National Bank of Circle,* 652 F.2d 882, 887 (9th Cir. 1981). The evidence and the inferences to be drawn therefrom must be construed in the light most favorable to the party opposing summary judgment. *Clipper Exxpress, supra,* 674 F.2d at 1261; *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir. 1981).

**2.** Safeco also submitted excerpts from the depositions of Beckham and her attorney as evidence that liability was uncertain in this case.

1. *Section 790.03(h)(5)*

■ Under § 790.03(h)(5), an insurer owes a duty to third-party claimants such as Beckham to attempt in good faith to effectuate a prompt, fair and equitable settlement of claims against the insured in which liability has become "reasonably clear." *Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979). Safeco moved for summary judgment on Beckham's claim under this subsection on the sole ground that Mankin's liability for the accident had not been reasonably clear, and thus the statutory duty never arose. The district court agreed, concluding that there had been a "substantial bona fide dispute as to liability." This conclusion was based on the court's finding that the attorney retained by Safeco to defend Mankin had evaluated the case as one in which liability was uncertain and there existed substantial evidence to support a verdict for either Beckham or Mankin.

Mankin's liability for the accident turned on whether she had entered the intersection where the accident occurred with the green or against the red light. Mankin claimed to have had the green light. A witness to the accident, however, stated that Beckham had entered with the green light. Beckham suffered from amnesia as a result of her injuries and remembered nothing about the accident.

On summary judgment, Safeco submitted the affidavits of the attorney who represented Mankin at trial and of the Safeco claims adjuster assigned to the case. Both stated that because the only two witnesses to the accident gave conflicting versions as to which party had entered the intersection with the green light, they considered the evidence of liability to be fairly evenly divided. The attorney stated that, in his judgment, Mankin had a good chance of winning at trial since Beckham had the burden of proof and Mankin appeared to be a "good and believable" witness.[2]

Beckham's counsel stated in his deposition that he had informed Beckham that a jury could conceivably believe Mankin's version of the ac-

Beckham submitted evidence in opposition to summary judgment, however, indicating that Safeco was aware that Mankin had in fact most likely entered the intersection against the red light. For example, Safeco was aware that two accident reconstruction experts, one of whom had been retained by the defense, had concluded that Mankin had entered the intersection several seconds into a red light. In a letter submitted by Beckham, the attorney retained by American Reserve to defend Mankin discussed the question of liability as follows:

> We took the position at the [settlement] conference that there was a question as to liability and we also asserted that the red light/green light situation was not so easily dispensed with. We, of course, know that Mr. Arnold Siegal, an accident reconstructionist, looked into this accident on our behalf and reached the conclusion, from the physical evidence, that Mrs. Mankin did in fact enter the intersection against the red light. For this reason, we requested that he not render a formal written report. Right now we are playing a game of "bluff" but if pushed for trial it looks like the plaintiff is going to prevail on the issue of liability.

Beckham also submitted copies of reports prepared by Safeco when it increased its reserve under Mankin's policy from $350,-000 to $650,000 and from $650,000 to $900,-000. Each report contained a notation stating that "evidence points to insured running light." Finally, Beckham submitted a

memorandum prepared by Mankin's trial attorney shortly after he was substituted by Safeco for the attorney retained by American Reserve. In evaluating the case file, he concluded that "[s]ome additional work must be done on the question of liability, which at this time appears to rest with defendant Mankin." The evidence of liability at the time this conclusion was drawn was no different than at the date of trial.

■ We think the evidence submitted by Beckham was sufficient to raise a genuine dispute whether Mankin's liability for the accident was reasonably clear prior to trial. The fact that there was some basis for disputing liability—Mankin's statement that she had the green light—does not as a matter of law establish that liability was not reasonably clear. The question is whether a reasonable person in Safeco's position would have concluded, in light of all the evidence and facts known to it, that it was reasonably clear that Mankin had run the red light. The evidence submitted by Beckham provides a sufficient basis to support such a conclusion, and thus creates an issue for the trier of fact to resolve.[3]

### 2. *Section 790.03(h)(2), (3) and (13)*

Our review of the pleadings and of the material submitted on summary judgment discloses no triable issue of fact with respect to Beckham's claims under subsections (h)(2), (3) and (13).

---

cident and return a verdict against her. Beckham stated in her deposition that she didn't know whether the jury would give her anything since it was impossible to tell what twelve jurors would do. These statements have no relevance whatsoever to the question whether liability was reasonably clear. Beckham's counsel was simply informing his client what every trial attorney knows about the risks of litigation. As for Beckham's statement, we see nothing probative about the expressions of anxiety and uncertainty by a young woman who has suffered severe and permanent injuries and who must trust to the vagaries of trial for compensation.

**3.** Safeco argues that the phrase "claims in which liability has become reasonably clear" was intended to refer only to those claims in

which liability is effectively undisputed, such as rear-end collisions, situations involving strict liability, and accidents where the insured admits having run a red light. In such claims, however, it seems to us that liability is clear, not just reasonably clear. Liability need not be effectively undisputed to be reasonably clear. Moreover, the duty imposed by § 790.03(h)(5) does not justify such a narrow reading of this phrase. The insurer is not required to settle claims in which liability is reasonably clear, it is simply required to make a good faith attempt to reach a settlement. While liability may be reasonably clear, damages may not be, and an insurer is not necessarily required to accept whatever settlement demand is made by the third-party claimant.

■ Subsection (h)(2) makes it an unfair settlement practice for an insurer to fail to acknowledge and act promptly on communications with respect to claims arising under an insurance policy. Beckham neither alleged nor presented evidence that any of her communications to Safeco went unacknowledged or were not acted upon with reasonable promptness. The fact that Safeco refused to accept her settlement demand of $1,000,000 does not by itself constitute a violation of this subsection. The duty imposed is to act promptly, not necessarily to act favorably.

■ Subsection (h)(3) requires an insurer to adopt and implement standards for the prompt investigation and processing of claims arising under an insurance policy. Beckham admitted in her complaint that Safeco began an investigation immediately upon notification of the accident. Moreover, the evidence submitted on summary judgment indicates that Safeco conducted a thorough and extensive investigation both of the accident and of the merits of Beckham's claim.[4]

■ Finally, subsection (h)(13) requires an insurer to provide promptly an explanation of the basis relied upon in the insurance policy for the denial of a claim or the offer of a compromise settlement. It is undisputed, however, that Safeco did not deny liability or offer a compromise settlement on the basis of its policy with Mankin. It fully admitted liability under the policy if Mankin were in fact responsible for the accident. It simply disputed Mankin's responsibility.

3. *Intentional and Negligent Infliction of Emotional Distress*

Although the district court did not specifically state the basis for granting summary judgment on these claims, we may affirm the grant on any ground clearly presented in the record. *See Avila v. Travelers Insur-*

ance Co., 651 F.2d 658, 661 n.4 (9th Cir. 1980).

■ An element of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the defendant. *See Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 497–98, 86 Cal.Rptr. 88, 468 P.2d 216 (1970); *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 394, 89 Cal.Rptr. 78, 88 (1970). The conduct upon which this cause of action is based is the same as that underlying Beckham's claim that Safeco failed to attempt in good faith to settle her suit against Mankin, that is, Safeco's refusal to accept the settlement demand of $1,000,000. Even if this refusal was in bad faith, however, it is not the kind of outrageous conduct necessary to support an action for intentional infliction of emotional distress. *Cf., Fletcher v. Western National Life Insurance Co., supra.* It is irrelevant that Safeco may have acted wantonly and maliciously, as alleged by Beckham, since it is the defendant's conduct, not its state of mind, that must be outrageous.

■ Nor does Safeco's alleged bad faith refusal to settle Beckham's claim give rise to a cause of action for negligent infliction of emotional distress. Nothing in *Royal Globe* created a general duty on the part of an insurer to exercise due care in the course of settlement negotiations with third-party claimants. The only duty owed is that imposed by § 790.03(h)(5). If an insurer breaches this duty, however, it is not thereby guilty of negligence. It is guilty of a statutory violation, and the third-party claimant may bring a civil action for damages resulting from the breach. While it may be that damages for emotional distress caused by the breach are recoverable in such an action, that question is not before us.

---

**4.** As an alternative ground for summary judgment on Beckham's claims under § 790.-03(h)(2) and (3), the district court held that neither of these subsections creates a right of action in third-party claimants such as Beck-

ham. We do not reach this issue, since we hold that, even assuming a right of action under these subsections, Beckham has failed to show a triable issue of fact on either claim.

### C.  *Untimely Request for Jury Trial*

It is conceded that Beckham's demand for a jury trial, filed May 23, 1980, was untimely under Fed.R.Civ.P. 38(b). Beckham requested, however, that the district court exercise its discretion under Fed.R.Civ.P. 39(b) to order a jury trial notwithstanding the untimeliness of her demand.[5] The district court denied this request.

The denial of a Rule 39(b) motion must be sustained unless it is shown that the district court has abused its discretion. *Chandler Supply Co. v. GAF Corp.*, 650 F.2d 983, 987 (9th Cir. 1980); *Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 621 (9th Cir. 1979). This court normally will refuse to interfere with the district court's discretion in this regard. *See Chandler Supply Co., supra,* 650 F.2d at 987.

Beckham sought to excuse her late demand by the fact that the attorney representing her on the date of removal (January 30, 1980) was not certified to practice in the federal courts, that he mistakenly believed that no demand was necessary under Fed.R. Civ.P. 81(c), and that she did not retain an attorney who was certified to practice in federal court until May 7, 1980. These facts, however, show nothing more than inadvertence and neglect. The district court thus did not abuse its discretion in refusing to order a jury trial. *Cf., Chandler Supply Co., supra* (affirming denial of untimely request where delay was result of attorney's neglect and heavy workload).

### CONCLUSION

The district court's orders denying jury trial and refusing to remand to the state court are AFFIRMED. The summary judgment on Beckham's claims for violation of California Insurance Code § 790.03(h)(2), (3) and (13) and for intentional and negligent infliction of emotional distress is AFFIRMED. The grant of summary judgment on Beckham's claim for violation of § 790.03(h)(5) is REVERSED and the case

5. Rule 39(b) provides in relevant part that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might

REMANDED for further proceedings on that claim.

have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."