**Linda BLAKE, a minor, By and Through her Guardian ad Litem William BLAKE, William Blake, Plaintiffs,**

v.

**NATIONAL CASUALTY COMPANY, National Bonding and Accident Insurance Company; M.M. Brase; and William H. Koenig; and Does 1 Through 30, Inclusive, Defendants.**

**No. CV 83–7026–ER(Px).**

United States District Court, C.D. California.

July 26, 1984.

Wylie A. Aitken, Santa Ana, Cal., for plaintiffs.

Kornblum, Kelly & Herlihy, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION

RAFEEDIE, District Judge.

Plaintiff Linda Blake, a minor, by and through her guardian ad litem William Blake, brought this action for breach of the duty of good faith and fair dealing and breach of statutory duties against defendants National Casualty Co. and National Bonding & Accident Ins. Co.[1] The suit was filed in California state court and removed to the federal court Oct. 31, 1983, on the basis of diversity jurisdiction.[2]

Plaintiff now moves to remand the case to state court as improvidently removed, based upon the interpretation of 28 U.S.C. 1332(c)'s definition of citizenship of insurance companies in "direct actions" that was given in a Western District of Michigan opinion. Defendants, contending that plaintiff's argument is foreclosed by Ninth Circuit law and that plaintiff refused to withdraw the motion even after being so informed, moves for sanctions under Federal Rule of Civil Procedure 11. After consideration of the papers submitted, as well as the oral argument by the parties, this Court denies plaintiff's motion for remand and grants defendants' motion for sanctions under Rule 11.

## DISCUSSION

*Motion for Remand*

Plaintiff relies upon 28 U.S.C. § 1332(c) which states, in part:

in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

This portion of § 1332(c) was added in 1964 to eliminate from diversity jurisdiction those tort claims in which both the injured party and the tortfeasor were state residents, but which, under Wisconsin's and Louisiana's "direct action" statutes, were brought against the tortfeasor's foreign insurance carrier without joining the tortfeasor as defendant.

Plaintiff cites *Tyson v. Connecticut General Life Ins.,* 495 F.Supp. 240 (E.D. Mich.1980), in support of her argument that § 1332(c) can prevent diversity jurisdiction in this case, in which plaintiff's employer, also a California citizen, provided

---

1. This Court already granted a motion which dismissed an additional plaintiff, two additional defendants, and another cause of action.

2. National Casualty is a Michigan corporation having its principal place of business in Michigan. National Bonding is a New York corporation with its principal place of business in Missouri. Plaintiff is a California resident.

her insurance. The current congestion in the federal courts prompted the *Tyson* court to construe direct action in this section broadly. It held that "when an insurer protects a third person against that person's liability to another, the insurer assumes that third person's citizenship for purposes of diversity of citizenship federal subject matter jurisdiction." *Id.* at 242. Were this Court to adopt the *Tyson* court's holding and to find the plaintiff's employer rather than the plaintiff to be the insured, diversity jurisdiction would not exist and this action would be remanded to the state court.

But, while this Court respects the wisdom of its fellow district court in Michigan, it is bound to follow the law as set by the Ninth Circuit. The Ninth Circuit, in *Beckham v. Safeco Ins. Co.*, 691 F.2d 898 (9th Cir.1982), stated that

> Courts have uniformly defined the term "direct action" as used in this section as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him.... Thus, "unless the the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action."

*Id.* at 901–02 (citations omitted). *Beckham* renders it impossible to consider this action a "direct action," because the plaintiff's employer could not be sued for the defendants' alleged breaches of the duty of good faith and statutorily imposed duties.

### Sanctions under Rule 11

Federal Rule of Civil Procedure 11 requires attorneys to sign all motion papers. This signature

3. The new Rule 11 now explicitly includes motions. Rule 7(b)(3) just iterates this.

4. Further, if plaintiff's attorney had shepardized the three cases *Tyson* cites in support of the narrow definition, he would have found *Beckham. Beckham* could also be found easily by using an annotated United States Code, a digest,

constitutes a certificate by [the attorney] that he has read the ... motion; ... that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*See also* Rule 7(b)(3), Fed.R.Civ.Pro.[3]

■ The argument advanced by plaintiff's attorney is not well grounded in the law, as it is directly opposed by controlling precedent. That might appear to require this Court to determine whether plaintiff's attorney made a "reasonable inquiry" into the law as required by Rule 11. *Tyson* itself informs a reader that two lines of cases defining "direct actions" exist and that the narrow definition had been supported by three circuits while the broader approach had been supported by one circuit.[4] But this Court's task is simplified because in the present case, defendants' attorney, upon receipt of the motion to remand, wrote to plaintiff's attorney, informed plaintiff's attorney of the *Beckham* decision, quoted its relevant language, and concluded that the present case is not a direct action because plaintiff "is not seeking to impose liability upon National Casualty for the negligence of its insured, regardless of whom you designate as being the insured, Linda Blake or her employer." Plaintiff's attorney received this letter *before* the motion was filed with this Court. Thus, all this Court must decide is whether plaintiff's attorney violated Rule 11 by making the motion to remand, given that he knew of the existing Ninth Circuit law.

or a computer search. All of these, with the possible exception of the computer search, are basic methods of researching a point of law. To have done none of them is not "reasonable inquiry," especially when the attorney must know that his position is the minority position.

It is not credible to this Court that the plaintiff's attorney did not know that his argument was not warranted by the existing law. A Northern District of California opinion cited *Tyson* approvingly, *see McLaughlin v. Connecticut General Life Ins.*, 565 F.Supp. 434, 440 (N.D.Cal.1983), but that does not affect the law in this Circuit at all. *McLaughlin* did not define § 1332(c)'s "direct action;" it merely raised the issue. Nor did it discuss *Beckham*.

Plaintiff's attorney did not attempt to distinguish *Beckham* in the motion. Indeed, this Court is unsure how *Beckham* could reasonably be distinguished, for in addition to the previously cited holding, the Ninth Circuit, in applying this holding, stated:

> The present suit is clearly not a direct action since Beckham is not seeking to impose liability on Safeco [the defendant] for the negligence of Safeco's insured, Mankin. *Rather, she is seeking to impose liability on Safeco for its own tortious conduct, i.e., Safeco's bad faith refusal to settle her claim against Mankin.* Such liability could not be imposed against Mankin, nor could Mankin be even be joined as a defendant in this suit.

691 F.2d at 902 (emphasis added). The only difference, factually, between *Beckham* and the present case is that Mankin, who supplied the insurance in *Beckham*, was not Beckham's employer. While plaintiff's attorney cited this difference at oral argument, he was unable to argue that this distinction had any significance.

Nor can the motion be viewed as a "good faith argument for the extension, modification, or reversal of existing law." Rule 11 permits attorneys to challenge precedent and advance novel theories of law, but at some point on a spectrum, such legal arguments become frivolous. This motion is an example. It does not even mention *Beckham*, although the plaintiff's attorney knew of the case before he filed the motion with this Court. If a motion does not mention controlling precedent, it is impossible for this Court to regard the motion as arguing that the precedent should be modified. Plaintiff's attorney might have made such an argument in his reply brief, but no reply brief was filed. Instead, plaintiff's lawyer chose to rely upon *Tyson* and *McLaughlin*. Such conduct is simply inadequate to constitute a good faith attempt to change the law.

■ Other cases may present greater difficulty in determining whether Rule 11 has been violated. This rule creates this difficulty by referring to the attorney's "knowledge, information, and belief" that the motion "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." A completely subjective standard—did the attorney *sincerely* believe that his argument was warranted, no matter how unreasonable the belief—would rob the rule of much of its utility. But too strict a standard might unduly chill an attorney's advocacy, especially for those advancing unpopular arguments. This determination requires sensitivity on the part of the court. Relevant factors to consider include the amount of time the attorney had to prepare the motion, the expertise of the attorney, the complexity of the law involved, and the extent to which the attorney supports the motion.

Once the Court determines that a paper has been signed in violation of Rule 11, the Rule requires that a Court *"shall"* impose upon the person who signed it ... an appropriate sanction." (Emphasis added.) As the Advisory Committee Notes to Rule 11 explain, "[t]he text of the amended rule seeks to dispel apprehensions that the efforts to obtain enforcement will be fruitless by insuring that the rule will be applied when properly invoked." 97 F.R.D. 165, 199 (1983). At oral argument, the defendants' attorney stated that the costs and fees incurred by his researching the issue, sending the letter to plaintiff's attorney, preparing the opposition, and preparing for and attending the oral argument were $600.[5]

**5.** The defendants' attorney had to fly from San Francisco to Los Angeles for the hearing.

This sanction will be imposed against the attorney rather than the plaintiff because the motion is unsupported by existing law, rather than unsupported by facts. While an attorney may have to rely upon his client for facts, knowledge and interpretation of the appropriate law is his specialty, and for which he has been specially trained. As a consequence, the attorney and not the client should bear the sanction for filing papers which violate Rule 11 by being unsupported by existing law, or as an attempt to modify the law.

This Court therefore Orders that the plaintiff's motion to remand is denied and that the defendants' motion for sanctions under Rule 11 is granted. This Court further Orders plaintiff's counsel to pay defendants' attorney $500 in costs and attorney's fees for opposing this motion.

While the hearing could have been dispensed with if only the remand motion had been under consideration, *see* Local Rule 7.11, a hearing

was necessary as the Court was prepared to grant sanctions against plaintiff's attorney.