Shirley **WEAST**, Grace Tobin, Henry Meredith, Joyce Wilson, and Christina Luallen, each individually and behalf of the class members at Portofino At El Mirage and in their capacity as board members of the Portofino Homeowners Association, a Nevada Non–Profit Association; Roes 1 through 500, Plaintiffs,

v.

**TRAVELERS CASUALTY AND SURETY COMPANY**, formerly known as Aetna Casualty and Surety, a Connecticut Corporation; Does I through XX; and Black and White Corporations XXI through L, inclusive, Defendants.

No. CV–S–98–0496 PMP (RJJ).

United States District Court, D. Nevada.

June 15, 1998.

**1130**

J. Randall Jones, William L. Coulthard, Jennifer C. Popick, Harrison, Kemp & Jones, Chtd., Las Vegas, NV, for Plaintiffs.

David Mincin, McKnight & Hendrix, PC, Las Vegas, NV, Mark R. Vonderhaar, Ferdinand Trampe, Haight, Brown & Bonesteel, Santa Ana, CA, Riley A. Clayton, (3rd–Party Def. Truck Ins. Co.), Broening, Oberg, Woods, Wilson & Cass, Las Vegas, NV, for Defendants.

*ORDER*

PRO, District Judge.

Presently before the Court is Plaintiffs Shirley Weast, Grace Tobin, Henry Meredith, Joyce Wilson and Christina Luallen's (collectively "Plaintiffs") Motion to Remand to State Court (# 4) filed on April 7, 1998. On April 13, 1998, Plaintiffs filed a Supplement to their Motion to Remand (# 5). Defendant Travelers Casualty and Surety Company ("Travelers") filed an Opposition (# 9) on April 27, 1998. On May 11, 1998, Plaintiffs filed a Reply (# 11).

## I. Factual Background

In January 1998, Plaintiffs filed a Complaint against Travelers in Clark County, Nevada seeking damages for breach of contract, detrimental reliance, breach of implied covenant of good-faith and fair dealing, violation of Nevada's Unfair Practices Act, and declaratory relief. In March 1998, Travelers removed the action to this Court pursuant to 28 U.S.C. § 1441 based on complete diversity. 28 U.S.C. § 1332(a)(1)(1991). Plaintiffs currently seek to remand the case to state court.

Plaintiffs obtained the right to sue Travelers in settlement negotiations related to a lawsuit they filed in Clark County, Nevada in April 1995. *Gilbride v. Kahala Trianon,* No. A344740 (April 1995). Plaintiffs owned homes in the El Portofino condominium development in Laughlin, Nevada. Plaintiffs sued the developer and the general contractor of the development because of construction defects in the condominiums. In September 1995, the general contractor filed a third party complaint against its subcontractors, including Beckwith Construction, seeking indemnity for alleged defects in their work.

Travelers was the general liability insurer of Beckwith Construction and its owner Carl Beckwith ("Beckwith"), both citizens of Arizona. The full policy limit was one million dollars. Beckwith Construction also held general liability policies of insurance from Truck Insurance Exchange ("Truck"). Travelers agreed to tender defense of the Nevada lawsuit to Truck. Truck then entered into settlement negotiations with Plaintiffs. In late August 1997, Plaintiffs and Truck reached a tentative settlement agreement. Travelers, although not included in these negotiations, offered to contribute $150,000. The Plaintiffs rejected Travelers overture.

In early September 1997, Plaintiffs, Beckwith, and Truck reached a new settlement agreement in which Travelers did not participate. Pursuant to this agreement, the court entered a judgment against Beckwith for four million dollars. Beckwith executed an assignment of all rights, title, interest and/or claims to any insurance coverage related to Beckwith and its work at Portofino, including the one million dollars under the Travelers policy, to the Plaintiffs. On September 29, 1997, the Nevada Court held the settlement between Beckwith and Plaintiffs to be in good faith.

## II. Discussion

In its Notice of Removal, Travelers asserts that there is complete diversity between Plaintiffs, citizens of Nevada, and itself, a Connecticut corporation with its principal place of business also in Connecticut. Plaintiffs contend that complete diversity is lacking. According to Plaintiffs, under 28 U.S.C. § 1332(c)(1), this Court must also consider Travelers to be a citizen of the state of its insured.[1] Since both Beckwith Construction and Beckwith are Arizona citizens, Travelers should also be considered an Arizona citizen. Furthermore, Plaintiffs assert that class representative Shirley Weast is a citizen of Arizona, not Nevada, thereby destroying complete diversity. Therefore, Plaintiffs seek a remand to state court.

■ At the outset, this Court must address whether class representative Shirley Weast is a resident of Arizona for diversity purposes. An individual's citizenship is determined by their domicile. 28 U.S.C. § 1332(a). Domicile is established by one's (1) physical presence in the state and (2) an intent to remain there. *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939). According to Weast, her permanent home is in Arizona, while her Laughlin, Nevada condominium is used solely for vacations. (Weast Aff. ¶¶ 4–5.) Therefore, as there is no contrary showing by Travelers, this Court finds that Weast is an Arizona resident.

The remainder of Plaintiffs' Motion to Remand addresses two basic issues. First, whether Travelers is an Arizona resident thereby defeating diversity jurisdiction. Second, whether public policy concerns militate the remand of this action to state court.

### A. Diversity Jurisdiction under 28 U.S.C. § 1332

Federal district courts have original jurisdiction over civil actions where the dispute is between citizens of different states, and the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1) (1991). In a class action, complete diversity must only exist between the named class representatives and the named defendant. *Snyder v. Harris*, 394 U.S. 332, 356, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In addition to one's designated citizenship under section 1332(c), section 1332(c)(1) also deems liability insurers citizens of the state of their insured in cases involving *direct actions* against such insurers. Therefore, the question before this Court is whether the claims against Travelers are direct actions for the purposes of section 1332(c)(1), thereby destroying complete diversity and necessitating a remand to state court.

### 1. Breach of Contract, Detrimental Reliance, Bad Faith, and Nevada Unfair Practices Act Claims.

Plaintiffs assert that under the plain language of section 1332(c)(1), Travelers is a citizen of the state of its insured—Arizona. Plaintiffs contend that the instant suit qualifies as a direct action because it is brought against a liability insurer for damages resulting from the conduct of its insured without joining the insured. On the other hand, Travelers maintains that under the Ninth Circuit Court of Appeal's decision in *Beckham v. Safeco Ins. Co.*, breach of contract, detrimental reliance, bad faith and unfair practices claims do not qualify as direct actions for the purposes of section 1332(c)(1). 691 F.2d 898 (9th Cir.1982).[2]

To ascertain the plain meaning of a statute, the Court must look to the particular statutory language at issue, as well as the

---

1. 28 U.S.C. § 1332(c)(1) provides, in pertinent part:

   [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State

where it has its principal place of business . . . .

2. Travelers also argues that these claims do not constitute a direct action because Nevada does not have a direct action statute. However, a direct action may still exist, since section 1332(c)(1) does not require that a direct action be brought under a statute. *O.M. Greene Livestock Co. v. Azalea Meats*, Inc., 516 F.2d 509, 510 (5th Cir.1975).

language and design of the statute as a whole. *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 403–405, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988). In *Carvin v. Standard Accident Ins. Co.,* the United States District Court for the Eastern District of Tennessee explained why the plain language of section 1332(c)(1) suggests that Congress intended to limit the types of actions to which the statute applied. 253 F.Supp. 232 (E.D.Tenn.1966). According to the court:

> It is quite clear ... that it was intended by the Congress that this amendment apply to a limited class of actions .... This Court must hold that Congress has effectuated this intent by the use of the words 'any direct action ...' Had the legislative intent been of broader scope, it would have been sufficient to say 'any action ...', and such language would have encompassed the present action. The word 'direct' must not be judicially stricken from the statute, but rather must be attributed a reasonable meaning in the light of the expressed intention of Congress.

*Id.* at 234.

Since Congress provided no guidance on what types of suits may be appropriately labeled direct actions, the Court must consult the legislative history of section 1332(c)(1) to determine whether the types of claims asserted here are direct actions. The Ninth Circuit Court of Appeals, in *Beckham,* undertook this examination. The *Beckham* court found that Congress was concerned about the increased burden on federal courts created by state direct action statutes. *Beckham,* 691 F.2d at 901. These statutes allowed the injured parties to sue a tortfeasor's insurance company without joining the tortfeasor. *Id.* Therefore, in 1964 Congress enacted section 1332(c)(1) to eliminate from diversity jurisdiction tort claims in which both the injured party and the tortfeasor are local residents, but which were brought in federal court because of direct action statutes. *Id.*

Given Congress' purpose in enacting section 1332(c)(1), courts have uniformly determined that a direct action exists only where a third-party tort victim forgoes suing the tortfeasor in favor of instead suing the tortfeasor's liability insurer directly. *Beckham,* 691 F.2d at 901–02; *see also Vargas v. California State Auto. Assoc.,* 788 F.Supp. 462, 463 (D.Nev.1992). Thus, "unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action." *Beckham,* 691 F.2d at 902; *see also Walker v. Firemans Fund Ins. Co.,* 260 F.Supp. 95, 96 (D.Mont.1966). Other courts have reached the same conclusion. *See Myers v. State Farm Ins. Co.,* 842 F.2d 705, 707 (3rd Cir.1988); *Bowers v. Continental Ins. Co.,* 753 F.2d 1574, 1576 (11th Cir.1985); *Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 473 (1st Cir.1979).

■ Plaintiffs breach of contract, detrimental reliance and breach of implied covenant of good faith claims all arise out of Travelers unfair settlement practices, not in response to the tortious conduct of Beckwith. Travelers' settlement practices, not Beckwith's practices, were allegedly in bad faith. Also, Travelers' allegedly breached its contract with Beckwith resulting in detrimental reliance. Therefore, Plaintiffs could not assert these claims against the insured. As a result, Plaintiffs bad faith claims are not direct actions. *Beckham,* 691 F.2d at 901.

■ Plaintiffs also claim Travelers violated Nevada's Unfair Practices Act. Nev.Rev. Stat. § 686A.310 (1997). This type of claim cannot be asserted against Beckwith because it also concerns Travelers' own practices, not those of its insured. Moreover, this Court, in *Crystal Bay Improvement Dist. v. Aetna Casualty & Surety,* held that "the [Nevada Unfair Practices] Act created no private right of action in favor of third party claimants against the insurer." 713 F.Supp. 1371, 1375 (D.Nev.1989) (citing *Tweet v. Webster,* 614 F.Supp. 1190 (D.Nev.1985)). Therefore, this claim does not qualify as a direct action for the purposes of section 1332(c)(1).

Since Plaintiffs breach of contract, detrimental reliance, breach of implied covenant of good faith, and violation of Nevada's Unfair Practices Act claims cannot be construed as direct actions, Travelers does not acquire its insured's citizenship for these claims. Travelers remains a citizen of Connecticut only, and diversity between the parties continues to exist.

## 2. Declaratory Relief Claim

Plaintiffs also seek a declaratory judgment as to their rights, and/or Travelers' obligations under the Travelers policy. Neither Plaintiffs nor Travelers address whether this claim constitutes a direct action for the purposes of section 1332(c)(1). The Ninth Circuit Court of Appeals has not ruled on whether a suit seeking declaratory relief qualifies as a direct action for purposes of section 1332(c)(1), but this Court finds persuasive authority from the Sixth Circuit Court of Appeals, as well as from numerous district court decisions.

■ The Sixth Circuit Court of Appeals confronted the issue of whether a declaratory relief claim is a direct action in *Henderson v. Selective Ins. Co.* 369 F.2d 143, 149 (6th Cir.1966). The court determined that the purpose of section 1332(c)(1) was to limit jurisdiction in connection with state direct action statutes. *Id.* 369 F.2d at 149. Therefore, the court decided that where a judgment creditor sues a tortfeasor's liability insurer to recover under a liability insurance policy, such action is not a direct action within the meaning of section 1332(c)(1). *Id.* This Court recognizes the likelihood that if such declaratory actions were considered direct actions, the purposes of section 1332(c)(1) would be frustrated.

*Bourget v. Government Employees Ins. Co.* also concerned declaratory relief actions. 313 F.Supp. 367 (D.Conn.1970). In *Bourget,* the plaintiff first successfully sued the tortfeasor, and then instituted a subsequent action against the tortfeasor's insurer. *Id.* at 368. The court resolved that the plaintiff, in seeking to impose duties upon the insurance company for a contractual liability assumed by it, could not have asserted this type of claim against the tortfeasor/insured. *Id.* Therefore, the court found no direct action. Likewise, in *Walker v. Firemans Fund Ins. Co.,* the United States District Court of Montana held that an action to determine coverage under an insurance liability policy is not a direct action for purposes of section 1332(c)(1). 260 F.Supp. at 96. Other courts have applied similar reasoning and concluded that declaratory actions are not direct actions. *See Holloway v. Gaylord Chemical,* 922 F.Supp. 1154 (E.D.La.1996); *Smith v. State Farm Ins. Co.,* 615 F.Supp. 453, 455 (D.Haw.1985); *Cunningham v. State Farm Mut. Auto. Ins. Co.,* 297 F.Supp. 1138 (E.D.Tenn.1969).

The reasoning applied in the above cases is the same reasoning used by the Ninth Circuit Court of Appeals in *Beckham.* Consequently, this Court concludes that the Ninth Circuit would also hold that declaratory actions are not direct actions. Since Plaintiffs could not seek a judicial determination of their rights and duties under the Travelers policy against Beckwith, this claim is not a direct action.

None of the Plaintiffs claims qualify as a direct action within the meaning of section 1332(c)(1). Therefore, Travelers is deemed a citizen of Connecticut only and diversity jurisdiction is proper.

## B. Public Policy Concerns

■ Plaintiffs argue that public policy dictates that this Court should ignore *Beckham* and its progeny, and allow remand because removal of this suit to the federal system would be "patently unfair."

First, Plaintiffs maintain that allowing Travelers to defend this suit in federal court essentially permits them to "forum shop" for the most beneficial venue. Regardless of Travelers motive for removing this suit to federal court, their use of 28 U.S.C. § 1441 is lawful. The Constitution's grant of federal jurisdiction over disputes between citizens of different states is directly applicable to this type of situation.

Second, Plaintiffs contend that Travelers removal is the initial step in a larger scheme to transfer this suit to an East Coast venue. Plaintiffs' belief that Travelers may later attempt a section 1404 transfer to an East Coast venue is pure conjecture. It is worth noting that if an East Coast transfer is Travelers ultimate goal, there are inherent safeguards within the Section 1404 transfer scheme to protect Plaintiffs interests. "The [section 1404] statute is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 23, 108 S.Ct. 2239, 101

L.Ed.2d 22 (1988). Therefore, courts may weigh particular characteristics of the suit in determining whether a transfer would prove "patently unfair."

Finally, Plaintiffs cite a number of cases that seem to invoke an anti-removal sentiment among courts whenever a question of jurisdiction exists. This Court, although recognizing such a sentiment, holds that no such question of jurisdiction exists. As previously stated, it is clear under the mandate in *Beckham,* and cases discussing declaratory relief, that Plaintiffs claims do not qualify as a direct action for the purposes of section 1332(c)(1). Notwithstanding the Ninth Circuit's finding of a strong presumption against removal, Travelers invocation of diversity jurisdiction is justified.

IT IS THEREFORE ORDERED THAT Plaintiffs' Motion to Remand (# 4) is DENIED.