**Susan MEZZETTI, Plaintiff(s),**

v.

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, et al., Defendant(s).**

**No. C 04–03022 JW.**

United States District Court, N.D. California.

Nov. 18, 2004.

Howard G. Frank, Law Offices of Howard G. Frank, Robert L. Mezzetti, II, Mezzeti Law Firm Inc., San Jose, CA, for Plaintiff.

Stephen P. Ellingson, Stephen M. Hayes, Hayes Davis Ellingson McLay & Scott LLP, Menlo Park, CA, for Defendants.

## ORDER DENYING MOTION TO DISMISS

WARE, District Judge.

### I. INTRODUCTION

Defendant State Farm Automobile Insurance Company ("State Farm") moves to dismiss three of Plaintiff Susan Mezzetti's ("Mezzetti") five causes of action. In resolving State Farm's motion, this Court decides two important issues of insurance law.

First, is a lawsuit against an insurer, brought under section 11580(b)(2) of the California Insurance Code, to collect on a judgment secured against the insurer's insured, a "direct action" under 28 U.S.C.

§ 1332(c)(1), in which case, for diversity of citizenship purposes, the insured's state of citizenship would also be assigned to the insurer?

Second, does California's litigation privilege apply to a communication made in the absence of an actual proposal of litigation or to a communication that allegedly obfuscates the existence of an insurance policy?

For reasons set forth below, this Court answers both questions negatively, retains jurisdiction, and denies State Farm's motion to dismiss.

## II. BACKGROUND [1]

On or about May 5, 1995, Mezzetti's automobile and Nancy Clewett's ("Clewett") automobile were in an automobile accident. Mezzetti believed that Clewett's automobile had caused the accident and that Clewett's automobile was insured by State Farm. Accordingly, Mezzetti's attorney sent a letter to State Farm claiming that State Farm should cover Mezzetti's damages.

On or about June 30, 1995, State Farm sent Mezzetti's attorney a letter denying Mezzetti's claim. (FAC at ¶ 7.) This letter lies at the crux of this lawsuit. In its entirety, the letter's body reads as follows:

"We have completed our investigation on the question of coverage surrounding the above-captioned loss.

"Based on our investigation, there was no State Farm policy in force on the vehicle involved on the above date of loss. Therefore, there is no coverage under this State Farm policy.

"If you have any questions, please feel free to contact me."

(Declaration of Stephen P. Ellingson in Support of State Farm's Motion to Dismiss, hereinafter Ellingson Decl., Ex. 1.)

Mezzetti alleges that, by this letter, State Farm denied the existence of a State Farm policy on Clewett's automobile. (FAC at ¶ 19.) Additionally, Mezzetti alleges that State Farm orally denied the existence of a policy on Clewett's automobile. (FAC at ¶ 19.)

In alleged reliance upon these representations, Mezzetti sought compensation elsewhere. As it happened, Mezzetti herself was a State Farm insured. Having been denied compensation under Clewett's putative policy, Mezzetti filed a claim under her own State Farm Uninsured Motorist ("UM") policy. (FAC at ¶¶ 8, 21–22.) Mezzetti and State Farm agreed to a $100,000 settlement, the maximum amount under Mezzetti's UM policy. (FAC at ¶ 8.)

Mezzetti also filed a lawsuit against Clewett in Santa Clara County Superior Court. In October 1999, the Santa Clara County Superior Court entered a default judgment in favor of Mezzetti in the amount of $643,382. (FAC Ex. A at 11:4.)

Ultimately, Mezzetti came to believe that State Farm had indeed covered Clewett's automobile during the accident. As a result, Mezzetti filed a lawsuit against State Farm in Santa Clara County Superior Court. Mezzetti's First Amended Complaint alleges five state law causes of action: (1) Collection/Satisfaction of Judgment Under Section 11580 of the California Insurance Code, (2) Declaratory Relief, (3) Fraud–False Representation, (4) Constructive Fraud–Section 1573 of the California Civil Code, and (5) Negligent Misrepresentation. Mezzetti prays for, *inter alia,* "the sum of $200,000[,] ... gen-

---

1. This Court derives the following statement of facts from Mezzetti's First Amended Complaint (hereinafter FAC), which must be con-

strued as true for purposes of resolving State Farm's motion to dismiss.

eral damages in the amount of $500,000 for mental suffering and emotional distress[, and] punitive damages." (FAC at 8.)

Pursuant to 28 U.S.C § 1441(a), State Farm removed Mezzetti's lawsuit on diversity of citizenship grounds. State Farm now moves, pursuant to FED. R. CIV. P. 12(b)(6) (Rule 12(b)(6)), to dismiss Mezzetti's Third Cause of Action (Fraud—False Representation), Fourth Cause of Action (Constructive Fraud–Section 1573 of the California Civil Code), and Fifth Cause of Action (Negligent Misrepresentation). State Farm's argument is twofold. First, State Farm argues that section 47 of the California Civil Code, California's litigation privilege, applies to all relevant communications between State Farm and Mezzetti. Because said communications are privileged, State Farm argues, State Farm cannot be liable to Mezzetti for any claims arising therefrom. Second, State Farm argues that Mezzetti fails, under FED. R. CIV. P. 9(b) (Rule 9(b)), to plead her fraud-based claims with sufficient particularity.

On November 1, 2004, this Court held a hearing on State Farm's motion. At the hearing, the Court, *sua sponte*, raised the issue of whether this was a "direct action" under 28 U.S.C. § 1332(c)(1), in which case this Court would lack subject matter jurisdiction. This Court first addresses the "direct action" issue and then proceeds to the merits of State Farm's motion to dismiss.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Although the parties have not requested that this Court address subject matter jurisdiction, this Court nevertheless does so before considering the merits of State Farm's motion to dismiss. *Steel Co. v. Citizens for a Better Environment*, 523

U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Without jurisdiction the court cannot proceed at all in any cause") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1900)); *Grupo Dataflux v. Atlas Global Group L.P.*, 541 U.S. 567, ——, 124 S.Ct. 1920, 1937, 158 L.Ed.2d 866 (2004) ("[I]t is the obligation of both district court and counsel to be alert to jurisdictional requirements"). This Court concludes that it has subject matter jurisdiction over this lawsuit and elects to expound its reasoning.

### 1. Diversity of Citizenship Confers Upon This Court Original Jurisdiction Over This Lawsuit

Title 28 U.S.C. § 1332(a)(1) confers upon this Court original jurisdiction over "all civil actions where the matter in controversy exceeds ... $75,000, and is between ... citizens of different States." The amount in controversy here exceeds $75,000 (FAC at p. 8); Mezzetti is a citizen of California (FAC at ¶ 1); and State Farm is a citizen of Illinois (State Farm's Notice of Removal, hereinafter Removal, at 2:24–27). Accordingly, this Court has original jurisdiction over this lawsuit. Thus, removal was proper under 28 U.S.C. § 1441(a).

### 2. The "Direct Action" Provision of 28 U.S.C. § 1332(c)(1) Does Not Apply Here

In holding that 28 U.S.C. § 1332(a)(1) confers upon this Court original jurisdiction over this lawsuit, this Court simultaneously holds that the "direct action" provision of 28 U.S.C. § 1332(c)(1) does not apply here. The "direct action" provision of 28 U.S.C. § 1332(c)(1) states that in "direct actions" an "insurer ... shall be deemed a citizen of the State of which the insured is a citizen, *as well as* of any State by which the insurer has been incorporated and of the State where it has its princi-

pal place of business." (Emphasis added). In other words, in a "direct action," an insurer can, for diversity of citizenship purposes, be deemed a citizen of up to three different states: the state of its incorporation, the state of its principal place of business, and the state of its insured. *Cf.* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). Thus, if Clewett is a citizen of California (which she apparently is), and if any of Mezzetti's causes of action are "direct actions," then the "direct action" provision of 28 U.S.C. § 1332(c)(1) could extinguish this Court's subject matter jurisdiction. After all, in that situation, Mezzetti, a citizen of California, would be suing State Farm, a citizen of California (by virtue of Clewett, State Farm's insured). *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (noting that, under 28 U.S.C. § 1332(a)(1), "diversity jurisdiction is not to be available when any plaintiff is a citizen of the same state as any defendant"). This Court holds, however, that none of Mezzetti's claims are "direct actions."

### a. Mezzetti's First Cause of Action Is Not a "Direct Action" Under 28 U.S.C. § 1332(c)(1)

■ Mezzetti's First Cause of Action, which is brought under section 11580(b)(2) of the California Insurance Code, seeks to collect on the default judgment that Mezzetti secured against Clewett in Santa Clara County Superior Court. Section 11580(b)(2) requires that all insurance policies issued in California contain "[a] provision that whenever judgment is secured against the insured . . ., then an action may be brought against the insurer on the policy." Numerous cases refer to section 11580(b)(2) as a "direct action" statute.

*See, e.g., Freudenberger v. Allstate Ins. Co.,* 941 F.Supp. 940, 942 (S.D.Cal.1996) (referring to section 11580(b)(2) as California's "direct action" statute); *Laguna Pub. Co. v. Employers Reinsurance Corp.,* 617 F.Supp. 271, 272 (C.D.Cal.1985) (noting that, under section 11580(b)(2), a claimant can bring a "direct action" against an insurance company); *San Diego Housing Comm'n v. Indus. Indem. Co.,* 95 Cal. App.4th 669, 687, 116 Cal.Rptr.2d 103 (2002) (noting that stipulated judgments may be enforceable in a "direct action" against an insurer under section 11580(b)(2)); *and Pruyn v. Agric. Ins. Co.,* 36 Cal.App.4th 500, 508, 42 Cal.Rptr.2d 295 (1995) (referring to section 11580(b)(2) as the "direct action" provisions of California's Insurance Code). However, few cases, if any, specifically construe section 11580(b)(2) vis-à-vis the "direct action" provision of 28 U.S.C. § 1332(c)(1). Notwithstanding the cases that refer to section 11580(b)(2) as California's "direct action" statute, this Court holds that section 11580(b)(2) is not a "direct action" statute under 28 U.S.C. § 1332(c)(1). Thus, Mezzetti's First Cause of Action is not a "direct action" under 28 U.S.C. § 1332(c)(1).

### i. Ninth Circuit Caselaw Holds that a "Direct Action," Under 28 U.S.C. § 1332(c)(1), Is a Case in Which an Injured Party Is Entitled to Bring Suit Against an Insurer Without First Obtaining a Judgment Against the Insured

In *Beckham v. Safeco Ins. Co. of Am.,* 691 F.2d 898, 901–02 (9th Cir.1982), the Ninth Circuit defined a "direct action," as used in 28 U.S.C. § 1332(c)(1), as a "case[ ] in which a party suffering injuries or damage for which another is legally responsible is *entitled to bring suit against the other's liability insurer without* joining

the insured or *first obtaining a judgment against him.*"

Based upon the legislative history of 28 U.S.C. § 1332(c)(1), *Beckham's* use of the phrase "entitled to bring suit against the other's liability insurer" likely refers to some form of statutory "entitlement." Congress adopted the "direct action" provision of 28 U.S.C. § 1332(c)(1) in 1964 in response to state statutes that permitted injured parties to sue tortfeasors' insurers directly, without joining the tortfeasors as defendants. These statutes effectively expanded federal courts' diversity jurisdiction because they enabled injured parties to sue out-of-state insurers whose insureds were instate citizens. Consequently, these state statutes severely burdened the federal courts. *See Northbrook Nat. Ins. Co. v. Brewer,* 493 U.S. 6, 10, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989). Judge Wisdom recounts the legislative history of the "direct action" provision as follows:

> The 1964 amendment was a response to 'direct action' *statutes* adopted in Louisiana and Wisconsin, allowing direct actions against liability insurers by persons injured in motor vehicle accidents. The Supreme Court had held in *Lumbermen's Mutual Casualty Co. v. Elbert,* [348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59 (1954)], that in actions brought under these *statutes,* diversity jurisdiction existed as long as there was diversity of citizenship between the injured claimant and the insurer, regardless of the citizenship of the insured. As a result of this decision, a large number of automobile accident cases were brought in the federal district courts in Louisiana, creating considerable burden on the dockets of those courts, which in 1964 were the most crowded dockets in the nation. There is no doubt that the 1964 amendment was motivated by congressional concern over the crowded dockets in Louisiana.

*Hernandez v. Travelers Ins. Co.,* 489 F.2d 721, 723 (5th Cir.1974) (emphasis added) (citations omitted). This Court assumes, *arguendo,* that section 11580(b)(2) of the California Insurance Code, as a statute, constitutes a valid "entitlement to bring suit against another's liability insurer" under *Beckham. See Beckham,* 691 F.2d at 901–02.

**ii. Because Section 11580(b)(2) Requires an Injured Party to First Obtain a Judgment Against the Insured, It Is Not a "Direct Action" Under 28 U.S.C. § 1332(c)(1)**

However, in order to be a "direct action" statute under 28 U.S.C. § 1332(c)(1), *Beckham* also requires that a statute permit an injured party to bring suit against an insurer *"without ...* first obtaining a judgment against [the insured]." *Id.* (emphasis added). Section 11580(b)(2) requires just the opposite. It *requires* an injured party to obtain a judgment against an insured *before* bringing suit against the insurer. Section 11580(b)(2) states that an injured party may bring an action against an insurer only "when[ ][a] judgment is *secured* against the insured." (Emphasis added.) The use of the past tense ("secured") plainly requires an injured party to *first* secure a judgment against an insured *before* bringing suit against the insurer. Under section 11580(b)(2), an injured party is not permitted to bring suit against an insurer *without first obtaining a judgment against the insured.* Thus, section 11580(b)(2) is not a "direct action" statute under 28 U.S.C. § 1332(c)(1). Accordingly, Mezzetti's First Cause of Action is not a "direct action." *See also* WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 2:307 (noting that "direct actions" are *"not* permitted in California or most other states") *and* Andrew

M. Campbell, Annotation, *Construction an Application of 28 U.S.C.A. § 1332(c)(1), Establishing Citizenship of Insurer in Diversity Action Against Such Insurer Where Insured Is Not Joined as Party Defendant,* 119 A.L.R. Fed. 135, 161–63 (1994) (listing cases which hold that the "direct action" provision of 28 U.S.C. § 1332(c)(1) does not apply when an injured party sues an insurer *after* obtaining a judgment against the tortfeasor-insured).

### b. Mezzetti's Second, Third, Fourth, and Fifth Causes of Action Are Not "Direct Actions" Under 28 U.S.C. § 1332(c)(1) Because They Are Directed At State Farm's Own Conduct

■ Because "direct actions" are causes of action wherein the liability sought against insurers could be imposed against their insureds, suits against insurers for *their own* alleged misconduct are not "direct actions." *See Beckham,* 691 F.2d at 902 ("The present suit is clearly not a direct action since ... [the plaintiff] is seeking to impose liability on [the defendant-insurer] *for its own tortious conduct"*) (emphasis added) *and* Campbell, *supra,* 119 A.L.R. Fed. at 147–48 (noting that cases which interpret the "direct action" provision of 28 U.S.C. § 1332(c)(1) support the principle that the provision "applies only when the conduct giving rise to the action is conduct of the insured in contrast to conduct of the insurer") (footnote omitted). Mezzetti's Second, Third, Fourth, and Fifth Causes of Action seek to impose liability on State Farm for its own conduct—namely, State Farm's alleged representation that it did not insure Clewett's automobile. Accordingly, they are not "direct actions" under 28 U.S.C. § 1332(c)(1). Having established its jurisdiction, this Court proceeds to the merits of State Farm's motion.

### B. State Farm's Motion to Dismiss

#### 1. Legal Standard

In ruling on a motion to dismiss, this Court must accept all allegations of material fact as true and must construe said allegations in the light most favorable to the non-moving party. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985). The United States Supreme Court, in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), set forth the strict standard for granting a Rule 12(b)(6) motion to dismiss. A Rule 12(b)(6) motion to dismiss must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99. As the Ninth Circuit has observed, "The [Rule 12(b)(6) ] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir.1997).

#### 2. The Litigation Privilege Does Not Apply to State Farm's Letter

■ State Farm moves to dismiss Mezzetti's Third, Fourth, and Fifth Causes of Action (i.e., Mezzetti's misrepresentation claims) on the ground that section 47 of the California Civil Code, California's litigation privilege, insulates State Farm from any liability arising out of its communications with Mezzetti. This Court rejects State Farm's argument.

#### a. State Farm's Letter Is Not A Communication Made in a "Judicial Proceeding"

#### i. A Communication Made in a "Judicial Proceeding" Can Encompass Some Pre–Litigation Communications

A "privileged publication" is "one made ... [i]n any ... judicial proceeding." CAL. CIV.CODE § 47(b). Over time, section 47

has come to mean more than what it says. First, courts have extended the privilege "to *any* communication, whether or not it is a publication." *Edwards v. Centex Real Estate Corp.*, 53 Cal.App.4th 15, 29, 61 Cal.Rptr.2d 518 (1997). Second, although section 47 ostensibly applies only to communications made in "judicial proceedings," courts have expanded "the judicial privilege to certain discrete categories of communications made *in advance* of actual litigation." *Id.* at 30, 61 Cal.Rptr.2d 518 (emphasis added). "The result has been to transform the relatively simple statutory privilege for communications made *in* a judicial proceeding into an amorphous immunity encompassing all kinds of communications related to an 'anticipated' lawsuit. In this process, the courts have seemingly managed to redefine 'in' as 'out.' " *Id.* at 31, 61 Cal.Rptr.2d 518 (citations omitted).

In *Edwards*, the California Court of Appeal delineated the outer boundaries of the litigation privilege. *Id.* at 33, 61 Cal. Rptr.2d 518 ("[O]ver the past 40 years the courts have expanded [the litigation privilege's] reach well beyond the language used by the Legislature. At some point there must be a limit to this expansion. It is not too late in the day to establish the appropriate standards for extending the litigation privilege to communications made in anticipation of litigation."). Originally, the litigation privilege applied only to communications made *during* litigation. The idea was that, by allaying parties' fear "that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation," the litigation privilege would "encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes." *Id.* at 29, 61 Cal.Rptr.2d 518. "This rationale," the court reasoned, "cannot logically be extended to communications made *prior* to or *in anticipation* of

litigation until the prospect of litigation has gone from being a mere possibility to becoming a contemplated *reality.*" *Id.* at 34, 61 Cal.Rptr.2d 518.

■ The court in *Edwards* set forth four "considerations for distinguishing the point at which the litigation privilege may attach to statements in advance of litigation." *Id.* First, "the communication must have been made preliminary to a *proposed* judicial or quasi-judicial proceeding." *Id.* Second, "the verbal proposal of litigation must be made *in good faith.*" *Id.* at 35, 61 Cal.Rptr.2d 518. Third, "the contemplated litigation must be *imminent.*" *Id.* Fourth, "the litigation must be proposed in order to obtain access to the courts *for the purpose of resolving the dispute.*" *Id.* The court noted that "[t]he critical point of each of these four elements is that the mere potential or 'bare possibility' that judicial proceedings 'might be instituted' in the future is insufficient to invoke the litigation privilege." *Id.* at 36, 61 Cal.Rptr.2d 518 (citing RESTATEMENT (SECOND) OF TORTS §§ 586–88 cmt. e). "In every case, the privileged communication must have some relation to an imminent lawsuit or judicial proceeding which is *actually* contemplated seriously and in good faith to resolve a dispute, and not simply as a tactical ploy to negotiate a bargain." *Id.* The court held that "the privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute, and not when a threat of litigation is made merely as a means of obtaining a settlement." *Id.*

ii. **However, State Farm's Letter Was Not a Communication Made in a "Judicial Proceeding" Because No One Had Actually, Verbally "Proposed" Litigation**

State Farm has not persuaded this Court that the litigation privilege should

apply to its letter. In particular, State Farm fails to address *Edwards's* first consideration—namely, whether State Farm's letter was composed "preliminary to a *proposed* judicial or quasi-judicial proceeding." *Id.* at 34, 61 Cal.Rptr.2d 518. The key word here is "proposed." In *Edwards,* the court explicated the meaning of "proposed":

> [A] lawsuit or some other form of proceeding *must actually be suggested or proposed,* orally or in writing. Without some *actual verbalization of the danger* that a given controversy may turn into a lawsuit, there is no unmistakably objective way to detect at what point on the continuum between the onset of a dispute and the filing of a lawsuit the threat of litigation has advanced from mere possibility or subjective anticipation to contemplated reality.

*Id.* at 34–35, 61 Cal.Rptr.2d 518 (emphasis added).

State Farm fails to aver that Mezzetti (or State Farm) actually, verbally suggested or proposed litigation. The closest that State Farm comes to doing so is to point out that Mezzetti filed her claim "for personal injuries under Clewett's insurance policy *through her counsel,* Robert Mezzetti, and shortly thereafter actually filed a lawsuit against Clewett." (State Farm's Reply Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint at 5:6–7.) Essentially, State Farm argues that Mezzetti's attorney's mere presence constitutes an actual, verbal suggestion or proposal of litigation.

Although State Farm's letter is in fact addressed to Mezzetti's attorney, "Robert [Mezzetti], Jr." of "The Mezzetti Law Firm," (Ellingson Decl. Ex. 1), this alone hardly constitutes an actual, verbal suggestion or proposal of litigation. To reiterate: "the mere potential or 'bare possibility' that judicial proceedings 'might be

instituted' in the future is insufficient to invoke the litigation privilege." *Edwards,* 53 Cal.App.4th at 36, 61 Cal.Rptr.2d 518. The *threat* of a lawsuit itself must be actually verbalized. An attorney's address in the heading of a letter, without more, is simply not enough. Accordingly, State Farm has failed to establish, at this pleading stage, that its letter is a communication made in a "judicial proceeding."

**b. Even if State Farm's Letter Is a Communication Made in a "Judicial Proceeding," It May Fall into an Exception to the Litigation Privilege**

California's litigation privilege does not attach to State Farm's letter for a second reason: even if State Farm's letter is a communication in a "judicial proceeding," it falls into an exception to the litigation privilege. *See* CAL. CIV.CODE § 47(b)(1)-(b)(4) (the four exceptions to the litigation privilege). Section 47(b)(3) excepts from the litigation privilege any communication "made in a judicial proceeding knowingly concealing the existence of an insurance policy or policies." If this Court's conclusion in Part III.B.1., *supra,* is incorrect—and State Farm's letter is indeed written in a "judicial proceeding"—then it is also written in a "judicial proceeding" for the purposes of section 47(b)(3). *Comm'r of Internal Revenue v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993) ("[I]dentical words used in different parts of the same act are intended to have the same meaning") (quoting *Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932)); *S & M Inv. Co. v. Tahoe Reg'l Planning Agency,* 911 F.2d 324, 328 (9th Cir.1990) ("When the same word or phrase is used in different parts of a statute, we presume that the word or phrase has the same meaning

throughout"). The issue, then, is whether State Farm's letter "knowingly conceal[s] the existence of an insurance policy or policies." CAL. CIV.CODE § 47(b)(3). This Court concludes that Mezzetti satisfactorily alleges that it does.

Mezzetti alleges that a State Farm policy *was* in force on Clewett's automobile at the time of the accident. (FAC ¶ 9.) If this Court assumes this allegation to be true, then it is reasonable to assume that State Farm, as Clewett's insurer, knew that a State Farm policy was in force on Clewett's automobile. Yet, State Farm arguably composed its letter in doublespeak. On the one hand, State Farm's letter states that "there was *no* State Farm policy in force on [Clewett's] vehicle...." (Ellingson Decl. Ex. 1) (emphasis added). Mezzetti naturally highlights this language as evidence that State Farm "concealed the existence of an insurance policy." On the other hand, State Farm's letter states that "there is no coverage under *this* State Farm policy." (Ellingson Decl. Ex. 1) (emphasis added). State Farm naturally highlights this language as evidence that it did not "conceal the existence of an insurance policy."[2] "No State Farm policy"? "This State Farm policy"? Is there or isn't there a State Farm insurance policy in force on Clewett's vehicle? It is unclear. Gobbledygook can be no less obfuscatory than an outright lie.

Webster's defines "conceal" as "to prevent disclosure or recognition of: avoid revelation of: refrain from revealing: withhold knowledge of: draw attention from: treat so as to be unnoticed" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 469 (2002) (definition 1). At the very least, State Farm's letter "draws [the reader's] attention from" the State Farm policy allegedly in effect on Clewett's automobile. Thus, even if State Farm composed its letter in a "judicial proceeding," it arguably did so by "knowingly concealing the existence of an insurance policy." Accordingly, State Farm has failed to establish that California's litigation privilege applies to State Farm's letter. Dismissal, then, is improper.

### 3. Mezzetti Has Pled Her Fraud Claims With Particularity

■ Lastly, State Farm argues that Mezzetti's fraud claims should be dismissed because she has failed to plead them with sufficient particularity. This Court disagrees.

Rule 9(b) requires that, "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." FED. R. CIV. P. 9(b). The purpose of Rule 9(b) is to "ensure[ ] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). Mezzetti's First Amended Complaint is specific enough to give State Farm notice of the particular misconduct which is alleged to constitute the fraud charged.

Mezzetti's First Amended Complaint avers that

On or about June 30, 1995, [State Farm] informed plaintiff's counsel, by letter of that date, that 'Based upon our investigation, there was no State Farm Policy [sic] in force on the vehicle involved on the above date of loss.' Additionally, [State Farm] also orally denied the existence of a policy which covered any por-

---

**2.** State Farm also unavailingly highlights a single line in its letter's heading, which refers to Nancy Clewett as "Our Insured." (Ellingson Decl. Ex. 1.)

**1068**

tion of the [accident]. When defendant denied the existence of a State Farm Policy which was 'in force on the vehicle involved in the accident', it did so knowing that there was in fact a State Farm Policy [sic] which did exist and did cover a vehicle involved in the [accident]. This conduct amounted to a knowing concealment of the existence of an insurance contract.

Plaintiff and her counsel relied upon this information in seeking the alternative remedy: a claim under the Uninsured Motorist Coverage of the policy. Thus, in February of 1996, plaintiff agreed to a policy limit settlement of $100,000 cash under the Uninsured Motorist Coverage. Plaintiff's claim was in fact at least $624,813.75, which was eventually obtained by way of a judgment against the [sic] Clewett....

On August 28, 2002, plaintiff and plaintiff's counsel discovered that in reality, Nancy Clewett did in fact have a valid policy in effect on May 5, 1995 [the date of the accident], said policy covering a vehicle involved in the subject accident. Plaintiff also discovered that [State farm] had either constructive or actual notice of Nancy Clewett's coverage relating to the accident, and willfully informed her otherwise in the ... letter of June 30, 1995.

(FAC at ¶¶ 7–9.) In short, Mezzetti alleges that on or about June 30, 1995, State Farm knowingly and falsely represented, orally and in writing, that a State Farm policy was not in force on Clewett's automobile. Moreover, Mezzetti alleges that she detrimentally relied upon State Farm's misrepresentations. These allegations are sufficiently specific to give State Farm notice of its alleged misconduct so that it can defend against the charge.

## IV. CONCLUSION

For the reasons stated above, this Court denies State Farm's Motion to Dismiss Mezzetti's Third, Fourth, and Fifth Causes of Action.